## CIRCUIT COURT OF LEE COUNTY

Vickie Darlene Butcher Varner

v.

Mickey Ray Varner

July 5, 1983

By JUDGE S. W. COLEMAN, III

The above divorce proceeding has been pending in the Circuit Court of Lee County since November 14, 1980. The complainant alleges the parties separated on July 17, 1980, due to mental and emotional abuse and harassment and cruelty by the defendant. The defendant's answer denies the allegations. The defendant has filed no cross-bill seeking a divorce or alleging that the complainant has committed acts giving rise to grounds for divorce; nevertheless, the evidence by both parties does seek to disclose the circumstances which gave rise to the dissolution of the marriage and the primary causes therefor. The main controversy between the parties appears to be over custody of a son, Mickey Ray Varner, Jr., born February 21, 1976.

Insofar as the grounds for divorce are concerned, the evidence indicates that in 1980 considerable disharmony arose in the marriage resulting in frequent and heated arguments. The complainant introduced evidence tending to show that the defendant on several occasions cursed and harassed the complainant and frequently used alcoholic beverage. The defendant either denied or sought to minimize the extent and frequency of the arguments and his use of alcohol and attempted to attribute the discord to the conduct of the complainant, Vickie Darlene Butcher Varner. While there was some evidence of threatening words from the defendant to the complainant after the separation if she undertook to take the child from him, the record does not disclose any physical violence or threats or physical mistreatment from the defendant which

contributed to the separation. The record is curiously silent without any specific reason being given by Vickie Varner as to why she left Mickey Varner, other than rather general references to his arguing and harassing her and using alcohol. There was no evidence that such conduct presented any problem prior to the separation which caused her to leave the marital home. On the other hand, the evidence indicates that immediately before and after the separation that Vickie Varner was keeping the company of other men and that it was her conduct and behavior which actually gave rise to the arguments and discord between the parties. Several neighbors and citizens in the community substantiate that Vickie Varner and Donnie Robbins have been cohabiting together since immediately after her separation, which was corroborated by Donnie Robbins in his sworn testimony from another trial. Allen Dale Jones testified to having an illicit relationship with Vickie Varner following her separation in December of 1980. While both events occurred following the separation of the parties, and may be more significant as to the custody issue, such conduct is important in substantiating those causes to which the defendant attributes the disharmony that led to the separation of the parties.

A close review of the record leads this court to conclude that the complainant has failed to show that the defendant was guilty of such cruelty or misconduct or abuse that would have justified the complainant in leaving or abandoning the marriage and, accordingly, her leaving the defendant and marriage, without justification, and refusal to return would constitute wilful desertion and abandonment on behalf of the complainant. Thus, the complainant's prayer for a divorce on the grounds of cruelty or constructive wilful desertion or abandonment has not been proven and the divorce on those grounds shall be denied. Even though the court has found on a factual basis that the defendant has grounds for divorce, nevertheless, since no cross-bill has been filed or divorce prayed for, none can or shall be awarded to him on those grounds. However, since the evidence indicates that the parties have lived separate and apart without cohabitation for a continuous period of one year, pursuant to Section 20-121.01 and § 20-91(9)(a) of the Code, the complainant may be granted a divorce in accordance with such statutes if she so elects.

Regardless of which party is entitled to a divorce or may have grounds therefor, different considerations are before the court in determining custody of infant children. While fault in causing dissolution of a marriage may have some bearing upon which parent may be the most suitable custodian of a child or which parent has the child's best interest at stake, the overriding consideration must always be what is best for the welfare of the child. Much emphasis is placed by the parties upon a separation agreement and supplemental agreement in which the parties allegedly undertook to agree upon the child's custody. Vickie Varner, in her testimony, alternatively undertook to deny signing the supplemental agreement in which she consented to the father's having custody of the child and previously testifying that she signed the agreement under threats and duress, without advice of counsel and without knowing the contents or consequences. While the court would undoubtedly place some consideration upon an agreement between the parties, the circumstances of the parties at the time and why the agreement was signed would always be significant as to whether or to what extent the agreement should be given any weight in determining what is in the best interest as to the child's welfare. Taking into consideration that the parties had just separated, that their lives were in a transitional state, that their place of residence was uncertain, and that the wife's means of supporting the child was questionable, the court would ordinarily place very little import upon whether Vickie Varner signed the supplemental agreement. However, based upon her contradictory testimony that she signed the agreement under threats and duress without benefit of counsel and then denying that she even signed the agreement, even in light of the notary's acknowledgment and the obvious similarities between her signature on the original agreement in the file, the court is compelled to conclude that she did sign the supplemental agreement. The effort to which Vickie Varner has gone to mislead the court concerning the supplemental agreement, while having little impact on the question of custody, raises serious problems with her credibility in weighing her other evidence in the case, particularly in regard to her relationship with Donnie Robbins and her current living arrangements, as well as her assessment of the suitability of Mickey Varner for custody and his parent's home as a satisfactory home

for the child. However, regardless of the finding by the court that the testimony of Vickie Varner is of questionable credibility, the other evidence in the case preponderates in finding that she is and has been living with Donnie Robbins in a situation that would not serve the child's best interest. Not only is the situation and physical environment not preferable insofar as the child is concerned, the moral climate and conduct of Vickie Varner and Donnie Robbins in the presence of other people is not in the child's interest. On the other hand, the home in which Mickey Varner lives with his parents appears to provide the child a good home. Not only are his material needs met by his father but the secondary support of the grandparents in the home appear to provide a stable and loving environment with a healthy moral climate. All members of the household show concern for the child's physical needs as well as his educational and spiritual needs. The court is of the opinion that the child's welfare would best be served by remaining with Mickey Ray Varner.

As to the visitation privileges, Vickie Varner testified that at one time she exercised very liberal visitation privileges seeing the child almost anytime she desired. She now complains that she is denied visitations. The court intends to take such measures that may be necessary to assure that Vickie Varner has liberal visitation privileges so long as she does not subject the child to undesirable influences or take him into the home with or company of Donnie Robbins. Vickie Varner shall have visitation privileges every other weekend beginning at 5:00 p.m. on Friday through 6:00 p.m. on Sunday and such other reasonable visitations during the week as the parties can agree upon. If no such agreement can be reached, the parties shall reschedule a hearing for the court to receive evidence and determine such additional visitations. Also, Vickie Varner shall have a thirty day visitation during each summer at such times as the parties can agree on, or if no agreement can be reached by the court. During the thirty day visitation by the mother the father shall have the child every other weekend from 5:00 p.m. on Friday through 6:00 p.m. on Sunday and shall pay to the mother for the support of the child during the thirty day visitation the sum of $35.00 per week. The thirty day visitation for this calendar year shall commence on July 22, 1983, at 5:00 p.m. through August 20, 1983, at 5:00 p.m., conditioned upon Vickie Varner providing

satisfactory living accommodations in which Donnie Robbins does not reside and does not remain in the child's presence, unless, of course, Vickie Varner and Donnie Robbins should be married at the time.